UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL M. TORSIELLO, M.D., <br><br> Plaintiff, <br><br> v. <br><br> JOHN STROBECK, *et al.*, <br><br> Defendants. | Civ. No. 2:12-3302 (KM) <br><br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This dispute arises from a medical practice merger. The plaintiff, Michael M. Torsiello, M.D., folded his practice into that of Defendant Walk In Wound Medical Associates, P.C. ("WIW"), allegedly in exchange for a minority ownership stake and certain compensation and benefits. Torsiello alleges that he did not receive his end of the bargain. Instead, the Defendants allegedly breached their fiduciary duties, breached contracts, misused corporate assets, engaged in corporate waste, and committed other oppressive acts. They allegedly did this by, *inter alia*, stripping WIW of accounts receivable, cash, and money, transferring assets to entities or individuals controlled by certain Defendants, taking Torsiello's personal property, misrepresenting WIW's financial condition, refusing to sign an employment agreement, improperly billing Torsiello's work, not compensating Torsiello as required by the contract, and failing to fund a 401(k) plan.

The Defendants, having removed the complaint from state court, now move to dismiss it on two grounds. First, any state-law claims relating to Torsiello's alleged 401(k) plan are governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1002 *et seq.* ("ERISA"), and therefore are preempted. Second, the claims are not sufficiently pleaded under Federal Rules of Civil Procedure 8(a) and 9(b). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

I agree, and will dismiss the Complaint, subject to amendment. To the extent Torsiello's claims relate to a 401(k) plan, they are preempted by ERISA. His claims must also be dismissed because they are too destitute of detail to

1

detail to meet federal pleading standards. Such dismissal will be without prejudice to the filing of an amended complaint, which may include claims that invoke, or are pleaded to make it clear that they are not preempted by, ERISA. Leave to amend is generally freely granted in any case; it is even more appropriate here, because Torsiello filed his complaint in state court, not knowing that it would be removed and subjected to federal pleading standards.

## I. BACKGROUND[1]

Torsiello had his own medical practice for 27 years. (Complaint ¶ 15, Ex. A to Notice of Removal [Docket No. 1-1]). He decided to merge his practice with WIW in exchange for a 10% ownership interest in WIW, a salary of $360,000 plus benefits, contributions to a 401(k) plan, a bonus structure of 60% of net revenue after expenses and retained earnings, management company ownership, and an offer to purchase shares in the Hawthorne Surgery Center. (*Id.*). WIW is operated and controlled by Defendant Strobeck, its Managing Member, who is also a physician. (*Id.* ¶ 7).

The merger did not go as planned. The Defendants,[2] among other things, "stripp[ed] WIW [] of significant account receivables, cash and monetary assets, [took] control of plaintiff's personal property, improperly us[ed] and transferr[ed] those assets to other entities or individuals, which entities were either owned and/or controlled by defendants, mismanage[d] the books and records of WIW [], misrepresent[ed] its assets and accounts receivables to plaintiff, misrepresent[ed] WIW['s] liabilities, expenses and profits, lur[ed] plaintiff into a fraudulent business scheme, [stole] confidential and proprietary information, [invaded Torsiello's] privacy, [refused] to sign an employment agreement, fail[ed] to conduct proper billing for work generated by plaintiff, fail[ed] to bill at all for some of plaintiff's work, depriv[ed] plaintiff of his

---

[1] The allegations of the Complaint have not yet been tested by any fact finder. This discussion, as it must, assumes their truth solely for the purpose of analyzing Defendant's Rule 12(b)(6) motion. *See* p. 4, *infra.*

[2] In addition to WIW and Strobeck, the defendants are Gabe Juliano, McBride Wound Care Management, LLC, Heart-Lung Associates, P.C. ("Heart-Lung"), and Jane Levine. Juliano is an investor or owner of a membership interest in WIW. (*Id.* ¶ 8). Heart-Lung is a corporation owned by Strobeck that did the billing for WIW's wound care and reconstructive and non-cosmetic surgery. (*Id.* ¶ 5). Jane Levine is the office manager of WIW. (*Id.* ¶ 10). The Complaint is silent as to McBride Wound Care Management, LLC. The section of the Complaint entitled "Parties," however, states that "Medical Claims Billing" is a New Jersey company that receives and submits WIW's billing statements for payment. (*Id.* ¶ 6).

distributive share of bonuses, profits and ownership interests in WIW [] and otherwise fail[ed] to honor plaintiff's employment agreement." (*Id.* ¶ 2).

Strobeck, Heart-Lung, and Juliano fired Torsiello once the business started generating significant profits, refused to return Torsiello's equipment and private proprietary information, did not pay Torsiello at various times, never established his 401(k) account, and refused to give Torsiello access to WIW's books and records. (*Id.* ¶ 23). In addition, on March 12, 2012, WIW office manager Jane Levine directed an individual to break into one of Torsiello's lockers at WIW and photocopied private and confidential information, including marble notebooks and charts. (*Id.* ¶¶ 64-66). Later the same day, at Levine's direction, an individual named Willie used bolt cutters to open Torsiello's other locker at WIW. (*Id.* ¶ 67). Levine then copied the contents of this locker, included patient charts and envelopes. (*Id.* ¶ 68).

On April 23, 2012, Torsiello filed the Complaint in the Superior Court of New Jersey, Law Division, Passaic County. The Complaint alleges that the conduct described above gives rise to causes of action for fraudulent inducement, a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* (the "CFA"), breach of oral contract, for relief pursuant to N.J. Stat. Ann. § 14A:12-7,[3] breach of fiduciary duty, waste and diversion of corporate opportunities, conversion, unjust enrichment, intentional infliction of emotional distress, negligent infliction of emotional distress, theft of proprietary information and invasion of privacy, fraud, and misrepresentation. Torsiello is seeking to recover his bonuses, unpaid salary, 401(k) retirement plan, severance pay, unreimbursed expenses, and his share of profits, plus attorney's fees and costs. (*Id.* ¶¶ 12, 14).

On June 1, 2012, the Defendants timely removed the case to this Court. Defendants allege that this Court has federal question jurisdiction over the claims relating to Torsiello's 401(k) plan[4] because any such claims are preempted by Sections 502(a)(1)(B) and 514 of ERISA. *See* 28 U.S.C. § 1331. To

---

[3] N.J. Stat. Ann. § 14A:12-7 permits the Superior Court to appoint a custodian or provisional director, order a sale of the corporation's stock, or enter a judgment dissolving the corporation if "the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, directors, officers, or employees." N.J. Stat. Ann. § 14A:12-7(1)(c).

[4] The claims that mention the 401(k) plan are fraudulent inducement, violation of the CFA, and oral contract.

3

the extent that ERISA does not govern the remaining claims, the Court may, under the proper circumstances, exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367. Venue is proper because this District is where the original state action was filed. *See* 28 U.S.C. § 1446(a).

On June 22, 2012, the Defendants filed this Motion to Dismiss the complaint [Docket No. 4].

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party, ordinarily the defendant, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). For purposes of a motion to dismiss, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by intervening Supreme Court case law).

The United States Supreme Court has elaborated on the standards that a court is to apply in analyzing a Rule 12(b)(6) motion to dismiss, particularly in light of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S.*

*Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-211 (3d Cir. 2009). The Court of Appeals recently summarized the three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The Defendants assert that certain of the allegations of the Complaint sound in fraud and therefore must be pleaded with additional particularity. *See* Sections III.A, B, and J, *infra*. Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement for allegations of fraud, over and above the level of detail required by Rule 8(a). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires that the plaintiff "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).

In general, "[t]o satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *In re Suprema Specialties, Inc.*

5

*Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.") (internal quotation and citation omitted)).

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

In addition, the Third Circuit has stated that these pleading requirements may be applied less strictly in the context of corporate fraud:

> Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Christidis*[ *v. First Pa. Mortg. Trust*], 717 F.2d [96,] 99-100 [3d Cir. 1983]. Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987); C. Wright & A. Miller, § 1298 at 416. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control.

*Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989); *DiMare v. MetLife Ins. Co.*, 369 Fed. App'x 324, 330 (3d Cir. 2010) (non-precedential).

## III. DISCUSSION

### A. ERISA Preemption

The Defendants have moved to dismiss the Complaint because ERISA preempts suits relating to the failure to create, fund, or properly manage retirement plans, such as Torsiello's 401(k) plan. Torsiello takes no position on this issue. (Opp. at 1 [Docket No. 5]). At a minimum, the Defendants believe this applies to the three causes of action that explicitly mention the 401(k) plan: fraudulent inducement (Count One), violation of the CFA (Count Two), and breach of oral contract (Count Three).

Section 502(a)(1)(B) of ERISA states that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 514 provides that ERISA preempts "any and all State laws" that relate to any covered employee benefit plan. 29 U.S.C. § 1144. The Supreme Court has interpreted "relate to" to mean "if [the claim] has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). A covered employee benefit plan includes one established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." 29 U.S.C. § 1003. One type of covered employee benefit plan is an employee pension benefit plan, which is any plan, fund, or program that "provides retirement income to employees" or "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ." 29 U.S.C. § 1002(2)(A).

The 401(k) plan to which Torsiello refers in the Complaint seems to be covered under ERISA because it typically provides for retirement income and a medical practice is evidently engaged in commerce.

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court explained the reach of ERISA preemption. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* at 208. Therefore, "ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (quotation and citations omitted). Section 502(a) is the "integrated enforcement mechanism" for ERISA remedies. *Id.* "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy

7

exclusive and is therefore pre-empted." *Id.* at 209. "Thus, the ERISA civil enforcement mechanism is [a] provision with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65-66 (1987)). Therefore, "causes of actions that fall within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Davila,* 542 U.S. at 209 (quoting *Metropolitan Life,* 481 U.S. at 66)). "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where no other independent legal duty is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila,* 542 U.S. at 210.

Following *Davila,* the Third Circuit established a two-prong test that a court should use in determining whether a plaintiff's state law claims are completely preempted by ERISA (and therefore removable to federal court). A state claim may is preempted, and removable, "only if (1) the [plaintiff] could have brought its . . . claim under § 502(a), and (2) no other legal duty supports the [plaintiff's] claim." *Pascack Valley Hosp., Inc., v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004).

Under the first prong of the test, a fair reading of the Complaint indicates that the Defendants failed to establish and make contributions to his 401(k) plan. (*See, e.g.,* Compl. ¶ 23(vii)). Torsiello is the participant, and therefore has standing under Section 502(a)(1)(B) to bring suit under ERISA.

The second prong evaluates whether "ERISA benefit plans and obligations underscore Plaintiff's state law claims." *Horizon Blue Cross Blue Shield of New Jersey v. E. Brunswick Surgery Ctr.,* 623 F. Supp. 2d 568, 576 (D.N.J. 2009). "To establish that no other separate legal duty supports a plaintiff's state law claims, a defendant must demonstrate that the state law claims are derived entirely from the particular rights and obligations established by the [ERISA] benefits plans." *Bunner v. PSE&G,* Civ. No. 11-2744, 2012 WL 1044313, at *5 (D.N.J. Mar. 9, 2012) (report and recommendation), *adopted by* 2012 WL 1059751 (D.N.J. Mar. 27, 2012). Torsiello's claims, in part, revolve around the Defendants' not having made contributions to his 401(k) plan. Thus, his right to recovery is intertwined "with the interpretation and application of ERISA-protected benefits and is therefore completely preempted by ERISA." *Id.; see Beye v. Horizon Blue Cross Blue Shield of New Jersey,* 568 F. Supp. 2d 556, 569, 569 n.18 (D.N.J. 2008) (finding completely

preempted by ERISA claims for unjust enrichment, misrepresentation, violation of the CFA, and breach of contract); *Noa v. Keyser*, 519 F. Supp. 2d 481, 484 (D.N.J. 2007) (dismissing breach of contract claim where plaintiffs conceded preemption); *Day v. Lockheed Martin Corp.*, 428 Fed. App'x 275, 278 (5th Cir. 2011) (non-precedential) (plaintiff's "401(k)-related claims seek benefits derived from Lockheed's retirement program for military-reserve employees, which is part of an overall employee-benefit plan. Thus, his 401(k)-related claims fall within ERISA's scope and are preempted.")

To enforce any rights relating to his 401(k) plan, Torsiello must bring a claim pursuant to Section 502(a)(1)(B) of ERISA. At a minimum, the claims that explicitly invoke the 401(k) plan are preempted by ERISA. Those claims are fraudulent inducement (Count One), violation of the CFA (Count Two), and breach of oral contract (Count Three).[5]

---

[5] Even absent ERISA preemption, these three state-law claims would be insufficiently pleaded and subject to dismissal.

"In order to establish a claim for fraudulent inducement, five elements must be shown: (1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012). Torsiello must plead this fraud-based count with sufficient particularity to put each Defendant on notice of the alleged fraudulent conduct. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Peel[ing] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth," *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012), the Complaint is too skimpy in alleging what misrepresentations were made, by whom, and when, and other facts supporting the remaining required elements of a fraudulent inducement claim. (*See, e.g.*, Compl. ¶ 15 (the Defendants fraudulently induced Torsiello to merge medical practices "by making *representations, misrepresentations, promises and statements*, that Torsiello would receive" certain compensation)). Therefore, setting ERISA aside, the fraudulent inducement claim would warrant dismissal.

A claim alleging a violation of the CFA, N.J. Stat. Ann. § 56:8-2, must relate to the sale or advertisement of any merchandise or real estate. N.J. Stat. Ann. § 56:8-2. In addition, "[i]n New Jersey, 'a breach of warranty, or any breach of contract is not per se unfair or unconscionable and a breach of warranty alone does not violate a consumer protection statute.' Rather, to succeed on a consumer fraud claim, a plaintiff must demonstrate 'substantial aggravating circumstances,' such as the existence of bad faith or lack of fair dealing, sufficient to constitute an 'unconscionable business practice.'" *Petri Paint Co., Inc. v. OMG Americas, Inc.*, 595 F. Supp. 2d 416, 421 (D.N.J. 2008) (quoting *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462 (1994)). The Complaint's allegations are threadbare and conclusory. While Torsiello lists various actions he alleges are unlawful under the CFA, they lack the specifics

9

## B. Relief Pursuant to N.J. Stat. Ann. § 14A:12-7 (Count 4)

Count 4 of the Complaint asserts that the Defendants are subject to N.J. Stat. Ann. § 14A:12-7, entitled "Involuntary dissolution; other remedies." That provision states:

> (1) The Superior Court, in an action brought under this section, may appoint a custodian, appoint a provisional director, order a sale of the corporation's stock as provided below, or enter a judgment dissolving the corporation, upon proof that
>
> . . .
>
> (c) In the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward one or more minority shareholders in their capacities as shareholders, directors, officers, or employees.

N.J. Stat. Ann. § 14A:12-7.

The Complaint alleges that "Strobeck, Juliano and all defendants have acted fraudulently and/or illegally, have mismanaged the corporation, have commandeered plaintiff's medical practice once it was absorbed into WIW, have abused their authority as officers and directors, have engaged in self-dealing and oppression at the expense of Torsiello." (Compl. ¶ 37).

That claim is insufficiently pleaded and must be dismissed for two reasons. First, it is not clear that Torsiello has standing – *i.e.*, that he is a

---

that would put each Defendant on notice of his allegedly wrongful conduct. In addition, none of the supposed unlawful acts seemingly relate to merchandise or real estate, the subject matters that the CFA covers. Accordingly, the CFA claim would not stand.

The same is true for Torsiello's breach of oral contract claim. "To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (App. Div. 2007). Torsiello does allege some basic terms of a contract with Strobeck and Heart-Lung, but not, for instance, when the contract was formed, or, setting aside conclusory allegations, how Strobeck and Heart-Lung breached the agreement.

minority shareholder of WIW. While the Complaint alleges that he was contractually entitled to a 10% stake in WIW, it is not clear whether he actually received any such shares. Second, the alleged oppressive conduct is not pleaded in sufficient detail. Torsiello states that "[m]onetary assets and opportunities of WIW [] have been depleted, transferred, diverted, or have been otherwise unaccounted for based upon the arbitrary acts of Strobeck, Juliano and all defendant's [sic]." (Compl. ¶ 36). He elaborates no further on what assets or opportunities went missing, which defendant is responsible or when this took place. Accordingly, this count must be dismissed.

### C. Breach of Fiduciary Duty (Count 5)

"'Breach of a fiduciary obligation is a tort claim, and thus requires the showing of a duty, a breach, an injury, and causation.'" *In re ORFA Sec. Litig.*, 654 F. Supp. 1449, 1457 (D.N.J. 1987) (quoting *Fausett v. Am. Res. Mgmt. Corp.*, 542 F. Supp. 1234, 1240 (D. Utah 1982)). Torsiello does allege that Strobeck and Juliano were officers and directors of WIW, and therefore had a fiduciary duty to act in good faith and in the best interests of WIW and Torsiello (assuming he was a shareholder, *see supra*). (Compl. ¶ 41). Indeed, it is given that "[c]orporate directors owe a fiduciary duty to the stockholders." *Maul v. Kirkman*, 270 N.J. Super. 596, 617, 637 A.2d 928, 939 (App. Div. 1994) (citing *Francis v. United Jersey Bank*, 87 N.J. 15, 36, 432 A.2d 814 (1981)).

Where this claim fails, however, is in alleging the particulars of the breach of this duty. Torsiello states that "[a]ll defendants breached their fiduciary obligations by, among other things, engaging in self-dealing, transferring corporate assets without consideration, underutilizing company assets, diverting corporate opportunities, depriving Torsiello of his rights to his rightful share of the profits of WIW [], using these entities for their personal benefit and for the benefit of third parties in complete disregard of Torsiello." (Compl. ¶ 42). The details of what Strobeck and Juliano (as opposed to the defendants collectively) did are too scant to satisfy *Twombly*. Accordingly, this claim must be dismissed.

### D. Waste and Diversion of Corporate Opportunities (Count 6)

Torsiello's claim for waste and diversion of corporate opportunities incorporates two distinct causes of action. The allegations in Torsiello's Complaint, however, are insufficient to state a claim for either.

1. *Waste*

Torsiello's waste claim fails for three reasons. First, the allegations fall short of establishing each element of the claim. Waste requires "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade. Most often the claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received." *Seidman v. Clifton Sav. Bank, S.L.A.*, 205 N.J. 150, 162, 14 A.3d 36, 43 (2011) (quoting *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del. Ch. 1997). That standard is "very rarely satisfied." *Seidman*, 205 N.J. at 163 (quoting *In re 3COM Corp.*, Civ. No. 16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999)). The Complaint does not plausibly state what assets were exchanged, the consideration received, and why such consideration is so disproportionately small. Hence, dismissal of this claim is warranted.

Second, waste is a derivative claim, but Torsiello is alleging it directly. *Strasenburgh v. Straubmuller*, 146 N.J. 527, 551, 683 A.2d 818, 830 (1996) ("Claims of waste . . . will always be derivative claims." (citing *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994) ("A claim for corporate waste is classically derivative."))).

Third, a waste claim must be brought by a stockholder. If Torsiello is not the owner of shares in WIW, that is an additional reason that he could not maintain this claim.

2. *Diversion of Corporate Opportunities*

A claim of diversion of corporate opportunities has five essential elements: (1) that there is presented to a corporate officer a business opportunity; (2) that the corporation is financially able to undertake that opportunity; (3) that the opportunity is, by its nature, in the line of the corporation's business and is of practical advantage to it; (4) that the opportunity is one in which the corporation has an interest or a reasonable expectancy; and (5) that by embracing the opportunity, the self-interests of the officer will be brought into conflict with the interests of the corporation." *See Allied Mgmt., Inc. v. Maybaum*, Civ. No. A-4056-04T2, 2006 WL 538757, at *2 (N.J. Super. Ct. App. Div. Mar. 7, 2006) (quoting *Valle v. North Jersey Auto Club*, 141 N.J. Super. 568, 573, 359 A.2d 504, 507 (App. Div. 1976)). This component of Count 6 must be dismissed as well.

First, the Complaint does not include plausible allegations of what corporate opportunities existed and were diverted, and, if so, by whom. *See Allied Mgmt.*, 2006 WL at *2.

Second, Torsiello cannot bring a direct diversion of corporate opportunities claim. *McKowan Lowe & Co., Inc. v. Wain*, Civ. No. 92-4618, 1993 WL 302257, at *10 (D.N.J. Aug. 2, 1993) (stating that, in *Davis v. United States Gypsum Co.*, 451 F.2d 659, 662 (3d Cir. 1971), "[t]he Third Circuit re-affirmed . . . that a minority shareholder cannot maintain a direct action to recover . . . for diversion of corporate assets").

Third, if Torsiello does not own shares in WIW, he has no claim.

In short, the waste and diversion of corporate opportunities count must be dismissed.

E. Conversion (Count 7)

"The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007).

Torsiello alleges that the Defendants misappropriated and converted valuable assets and opportunities belonging to Torsiello by "terminating plaintiff from employment at WIW [], actively soliciting patients which plaintiff brought into the WIW [] practice, and diverting from plaintiff the opportunity to continue treatment of his patients." (Compl. ¶ 50).

The Complaint does not clearly state what property right belonging to Torsiello was allegedly interfered with. Therefore, this count must be dismissed.

F. Unjust Enrichment (Count 8)

"[T]o claim unjust enrichment" under New Jersey law, "a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011).

In the Complaint, Torsiello formulaically recites these elements, but such a recitation does not satisfy federal pleading standards under *Twombly* and *Iqbal*. (*See* Compl. ¶¶ 53-56). At best, the Court can make out that Torsiello agreed to merge his practice into WIW in exchange for various forms of compensation, and the business arrangement went awry. It is unclear that, to Torsiello's detriment, the Defendants received a benefit for which Torsiello was uncompensated. The Complaint's unjust enrichment allegations fall short of the required specificity and plausibility. Therefore, this count is dismissed.[6]

### G. Intentional Infliction of Emotional Distress (Count 9)

The New Jersey Supreme Court has laid out what a plaintiff must allege to state a claim for intentional infliction of emotional distress:

> [T]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.
>
> Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it."

*Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366-67, 544 A.2d 857, 863 (1988)

Torsiello's Complaint merely recites the legal elements of this claim:

---

[6] The Defendants request that Torsiello's jury demand be struck because one of the allegations is that "Plaintiffs have no adequate remedy at law." (Compl. ¶ 56). I decline to do so. Much of the Complaint seeks legal, as opposed to equitable relief. (Compl. at 21). In any event, legal and equitable grounds may be pled alternatively, or even inconsistently. *See* Fed. R. Civ. P. 8(d)(2) & (3).

> 58. Strobeck, Juliano, and all defendants, perpetrated the above-described wrongs against Torsiello without justification and with the intent to cause him to suffer emotional distress and anguish.
>
> 59. As a direct and proximate result of the above-described actions of defendants, Torsiello has suffered severe mental and physical anguish and distress.

(Compl. ¶¶ 58-59). This Count incorporates by reference the rest of the allegations of the Complaint. Even combing through these, however, I see nothing that identifies the severe emotional distress to Torsiello or its proximate causation by any Defendant. Accordingly, this claim is dismissed.

### H. Negligent Infliction of Emotional Distress (Count 10)

An independent tort action for negligent infliction of emotional distress generally takes two forms. First, a "plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 195 N.J. 91, 104, 948 A.2d 610, 618 (2008) Second, a plaintiff can show that "(1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress." *Id.*, 195 N.J. at 103, 948 A.2d at 617-18.

The Complaint's allegations come nowhere close to stating that Torsiello was placed in reasonable fear of immediate personal injury or that he witnessed the death of, or serious injury to, anyone in a close relationship with him. This cause of action must be dismissed.

### I. Theft of Proprietary Information and Invasion of Privacy (Count 11)

In Count 11, Torsiello appears to allege two separate causes of action: misappropriation of proprietary business information and intrusion.[7]

---

[7] Invasion of privacy consists of four potential torts:

(1) intrusion (e.g., intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or

15

1. *Theft of Proprietary Information*

"Misappropriation of confidential information may constitute unfair competition under New Jersey law." *Rest. Techs, Inc. v. Allora*, Civ. No. 06-5202, 2008 WL 3843527, at *7 (D.N.J. Aug. 15, 2008) "Under New Jersey law, to be judicially protected, misappropriated information need not rise to the level of the usual trade secret, and indeed, may otherwise be publicly available. The key to determining the misuse of the information is the relationship of the parties at the time of disclosure, and its intended use." *Platinum Mgmt., Inc. v. Dahms*, 285 N.J. Super. 274, 295, 666 A.2d 1028, 1038 (Law Div. 1995) (citing *Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1407-10 (3rd Cir. 1985) (citing *Kamm v. Flink*, 113 N.J.L. 582, 175 A. 62 (E & A 1934))). This tort tends to arise where an ex-employee uses confidential information to assist a competitor. *See Platinum Mgmt.*, 285 N.J. Super. at 295, 666 A.2d at 1038 (finding that employee misappropriated confidential customer buying habits, mark-up structure, merchandising plans, projections, and product strategies from former employer). A court may look to whether the information is public, whether it was provided in the course of employment for the sole purpose of servicing clients, how detailed the information is, and whether the party using the information is aware of the information holder's interest in protecting the information, such as through signing a confidentiality agreement. *See Lamorte Burns & Co., Inc. v. Walters*, 167 N.J. 285, 298-302, 770 A.2d 1158, 1166-68 (2001); *Thomas & Betts Co. v. Richards Mfg. Co.*, No. 08-3117, slip op. at 10-11 (3d Cir. June 26, 2009) (not precedential); *see also Restatement (Third) of Agency* § 8.05 (2006) (agent's duty not to use property or communicate confidential information for benefit of self or third party).

---

prying into personal affairs); (2) public disclosure of private facts (e.g., making public private information about plaintiff); (3) placing plaintiff in a false light in the public eye (which need not be defamatory, but must be something that would be objectionable to the ordinary reasonable person); and (4) appropriation, for the defendant's benefit, of the plaintiff's name or likeness.

*Rumbauskas v. Cantor*, 138 N.J. 173, 179-180, 649 A.2d 853, 856 (1994) (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 117 (5th ed. 1984)). The facts underlying Torsiello's claim are that Jane Levine directed an individual to break into Torsiello's lockers at WIW, and then copied private, confidential, and proprietary information that was inside. Of the four torts comprising invasion of privacy, only intrusion seems even potentially to fit.

The Complaint alleges that Levine photocopied "charts, marble notebooks that contained private information, accountant information, and other patient information." (Compl. ¶ 66; see also id. ¶ 68). At the time of the disclosure, Torsiello was an employee of WIW. (Compl. ¶ 3). WIW allegedly took medical information relating to its own patients (presumably to aid in their care); the Complaint does not clearly indicate why Torsiello would have a privacy interest in such information vis-à-vis WIW. Without more, the Complaint does not plausibly plead misuse of any of the information allegedly removed from Torsiello's locker. Therefore, this count must be dismissed.

2. *Intrusion*

In *Poltrock v. N.J. Automotive Accounts Mgmt. Co.*, District Judge Wolfson outlined the nature of this claim:

> [T]he intrusion must be "highly offensive to a reasonable person," a determination that turns on what a person's reasonable expectation of privacy is with respect to the item or area searched or intruded upon. *White*, 344 N.J. Super at 222; *see also State v. Hempele*, 120 N.J. 182, 200 (1990) (holding that "expectations of privacy are established by general social norms."). Thus, an intrusion is not highly offensive "when the [defendant] intrudes into an area in which the victim has either a limited or no expectation of privacy." *White*, 344 N.J.Super at 222. Notwithstanding a plaintiff's subjective expectations of privacy, a court must determine whether objectively, given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy. *Id.*
>
> . . .
>
> Even if a plaintiff demonstrates he retained a privacy interest in the area or item searched, a court must weigh the competing interests of the parties to determine whether the defendant's reasons for its intrusion outweigh the plaintiff's right to privacy. *See N.O.C., Inc.*, 197 N.J. Super at 258 (finding that the case law imposes a balancing test in privacy actions where "social need is to be weighed against the individual's right to privacy"); *Parish National Bank*, 397 So.2d at 1286 ("The reasonableness of the defendant's conduct is assessed by balancing his interest in

pursuing his course of conduct against the plaintiff's interest in protecting his privacy.").

Civ. No. 08-1999, 2008 WL 5416396, at *5-6 (D.N.J. Dec. 17, 2008). "As is true in Fourth Amendment cases, the reasonableness of a claim for intrusion on seclusion has both a subjective and objective component." *Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300, 317, 990 A.2d 650, 660 (2010)

The Complaint states that Torsiello is an employee of WIW. (Compl. ¶ 3). "[W]hether an employee has a reasonable expectation of privacy in her particular work setting "'must be addressed on a case-by-case basis.'" *Stengart*, 201 N.J. at 317, 990 A.2d at 660 (quoting *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) (plurality opinion) (reviewing public sector employment)).

In *Ratti v. Serv. Mgmt. Sys., Inc.*, the plaintiff-employee claimed intrusion after his employer opened his locked desk drawer and discovered a pellet gun inside. Civ. No. 06-6034, 2008 WL 4004256, at *3 (D.N.J. Aug. 25, 2008). In granting summary judgment in favor of the employer, the court found that the employee had no objectively reasonable privacy right because "[t]he desk was located at his place of employment in an unlocked office, used by other employees, and contained his employer's documents." *Id.*

The allegations in the Complaint are analogous to the facts of *Ratti*. Torsiello's locker was at his place of employment and it apparently contained patient files relevant to the medical practice. Therefore, this claim, too, is dismissed without prejudice to refiling in amended form.

### J. Fraud and Misrepresentation (Count 12)

Torsiello alleges that the Defendants committed fraud and misrepresentation by "refusing to sign an employment agreement while at the same time accepting all income produced by plaintiff, and reaping the benefits of plaintiff's established medical practice." (Compl. ¶ 72). New Jersey has separate causes of action for fraud and negligent misrepresentation. I will address each separately.

#### 1. *Fraud*

"The elements of common law fraud in New Jersey are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."

18

*Joe Hand Promotions, Inc. v. Mills*, 567 F. Supp. 2d 719, 727 (D.N.J. 2008) (citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624-25, 432 A.2d 521 (1981)).

Torsiello does not plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). He does not identify a misrepresentation, allege that the speaker knew it was false, or state that the speaker intended for Torsiello to rely on the misrepresentation. Nor has Torsiello offered anything other than conclusory allegations as to reasonable reliance or damages. Accordingly, he has not stated a claim for fraud.[8]

### 2. *Negligent Misrepresentation*

Torsiello's negligent misrepresentation claim fares no better. To establish that claim, a plaintiff must show "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J.2006) (quotations omitted). "The plaintiff must also demonstrate that he sustained an injury proximately caused by the defendant's statements." *Id.* A plaintiff must further allege that the defendant owed him a duty of care. *Kronfeld v. First Jersey Nat. Bank*, 638 F.Supp. 1454, 1465 (D.N.J.1986). "The common law tort of negligent misrepresentation shares all the components of fraud, but includes one additional factor: the misrepresentation must be made by a person with a duty to the plaintiff." *In re Prudential Ins. Co. of Am. Sale Practices Litig.*, 975 F. Supp. 584, 619 (D.N.J. 1996), *rev'd on other grounds*, 133 F.3d 225 (3d Cir.), *cert. denied*, 525 U.S. 817 (1998).

The elements of negligent misrepresentation overlap with those of a fraud cause of action, and the outcome is the same: Torsiello's claim for negligent misrepresentation must be dismissed.

---

[8] Torsiello argues that it is premature to dismiss the fraud-based counts because the underlying facts are within the Defendants' control and he has not had a chance to take discovery. Indeed, "[p]articularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). Even considering this, Torsiello must still meet federal pleading standards to survive a motion to dismiss, and he has not done so.

## IV. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss is **GRANTED**. Torsiello's Complaint is dismissed without prejudice to the filing of an amended complaint that states non-preempted claims, meets federal pleading standards and specifically sets forth a jurisdictional basis for federal-question, diversity and/or supplemental subject matter jurisdiction.

An appropriate order follows.

                                                                          _____
                                                                          KEVIN MCNULTY, U.S.D.J.

Date: June 27, 2013